IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYROME L. S., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 22-cv-00249-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tyrome L. S. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id*. § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[1] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[2] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such

---

[1] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[2] *See generally* 20 C.F.R. § 416.960 for Title XVI.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits in 2019. (R. 21, 393-412.) In his applications, Plaintiff alleged he had been unable to work since July 1, 2018, due to conditions including a surgical hernia, type 2 diabetes, foot nerve damage, posttraumatic stress disorder, anxiety, and knee and back problems. (R. 405, 407, 437, 460.) Plaintiff was 42 years old at the time of the ALJ's decision. (R. 42, 405, 407.) He has a GED and past relevant work as a stock clerk, sales associate, security guard, kitchen helper, and paint helper. (R. 76-77, 438, 461.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 292-98, 307-20.) Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 321-26, 50-83.) The ALJ denied benefits and found Plaintiff not disabled. (R. 21-42.) The Appeals Council denied review on March 15, 2021 (R. 6-11), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[3] Plaintiff now appeals.

---

[3] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2024. (R. 23.) The ALJ then found at step one that Plaintiff had engaged in substantial gainful activity ("SGA") after the alleged onset date, at least until April 1, 2019. (R. 24.) As the ALJ found there had been a subsequent continuous 12-month period during which claimant did not engage in SGA, she continued her analysis. (*Id.*)

At step two, the ALJ found Plaintiff had the following severe impairments: (1) bursitis and partial tear of the left shoulder; (2) obesity; (3) peripheral neuropathy; (4) status post hernia repair; (5) inferior surface reaching tear of the right knee; and (6) depressive disorder. (R. 24-28.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 28-31.)

The ALJ then determined Plaintiff had the RFC to perform "less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with multiple physical and mental limitations. (R. 31.) Pertinent to this appeal, the ALJ found Plaintiff could "occasionally reach overhead and frequently reach in all other directions with the left, non-dominant upper extremity" and "adapt to a work setting and to some changes in that work setting." (*Id.*) The ALJ provided a recitation of the evidence that went into this finding. (R. 31-40.) At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 40.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as filler, sorter, and assembler. (R. 41.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 42.)

IV. Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to sufficiently define Plaintiff's capacity "to adapt to a work setting and to some changes in that work setting," (ECF No. 17 at 4-7); (2) improperly relying on VE testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT") as to reaching (*id.* at 7-10); and (3) failing to find Plaintiff's diabetes severe at step two or incorporate "workplace limitations"—such as breaks beyond those normally allotted—in the RFC (*id.* at 11-13). Having considered the ALJ's decision and the administrative record, the undersigned finds no error. Plaintiff's arguments are reorganized for clarity and addressed in step with the sequential process.

V. Analysis

    A. The ALJ's Consideration of Plaintiff's Diabetes.

        1. **Step two**

Plaintiff first argues the ALJ erred by finding his diabetes non-severe without evidentiary support, while simultaneously finding his diabetes-induced peripheral neuropathy to be a severe impairment. (ECF No. 17 at 11.) The undersigned finds these arguments unpersuasive.

Whether an ALJ finds an impairment to be severe is a step-two consideration. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (no error where six other impairments were severe). This is because, after step two, the ALJ considers the combined effect of all impairments (severe or not). *Brescia v. Astrue*, 287 F. App'x 626,

629 (10th Cir. 2008) (unpublished);[4] *see also* 20 C.F.R. § 404.1545(e)[5] ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity"). "By its plain terms, the regulation requires a claimant to show only '*a* severe' impairment—that is, *one* severe impairment—to avoid denial of benefits at step two." *Allman*, 813 F.3d at 1330 (emphasis in original).

Here, the ALJ found multiple other impairments to be severe (R. 24-25) and, as noted below, continued to consider Plaintiff's diabetes at other steps of the evaluation (R. 29, 32-34). As such, there was no error in finding Defendant's diabetes non-severe.

> **2.    Diabetes-related limitations in the RFC**

The heart of Plaintiff's diabetes arguments go to the RFC analysis, where he asserts the ALJ erred "by finding no workplace limitations regarding Plaintiff's need for additional breaks when working" due to diabetes. (ECF No. 17 at 11.) In support of these limitations, Plaintiff points to his own testimony, where he indicated that "when he last worked, his diabetes flared up at times," requiring he take breaks every 30-35 minutes to "check his blood sugars, eat snacks, become hydrated, take his medication, and use the bathroom." (*Id.* at 12 (citing R. 70-71).) He also references a 2019 statement from Dr. Chandan Dattatraya Lad that indicated Plaintiff could return to work with "breaks to check his blood sugar, eat accordingly, and take his medications for diabetes with neuropathy." (*Id.* (citing R. 776).) Plaintiff argues these limitations would have precluded competitive employment. (*Id.* (citing the VE testimony at R. 81).) Further, he faults the ALJ for making an unsupportable medical finding when she held that Plaintiff could wait

---

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[5] *See generally* 20 C.F.R. § 416.945 for Title XVI.

6

until the customary break times to manage his diabetes. (*Id.* at 12-13.) The Court, however, finds the ALJ's analysis was proper.

In order to proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [his] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).[6]

Throughout her decision, the ALJ discussed Plaintiff's testimony regarding his diabetes—and the effect it had on his work—as well as the longitudinal medical record and various physicians' findings. For example, at step one,[7] she discussed Plaintiff's

---

[6] *See generally* 20 C.F.R. § 416.913 for Title XVI.

[7] An ALJ's assessment of a claimant's symptoms is often not limited to a single place in the decision. *See, e.g., Scott v. Berryhill*, 695 F. App'x 399, 404-05 (10th Cir. 2017) (unpublished) (ALJ's symptom findings were "scattered throughout her decision" and "[w]hen considered together, they demonstrate[d] the ALJ's compliance with her duty to evaluate and discuss factors relevant to the claimant's" symptoms).

testimony that "his diabetes flared up the more effort/energy he exerted" at his latest job, which resulted in him taking more breaks to use the restroom, take his medication, check his blood sugar, eat snacks, and hydrate. (R. 24.) She also noted his testimony that he took a break every 30-35 minutes. (*Id.*)

At step two, the ALJ noted that medical records indicated Plaintiff was compliant with his diabetes treatment "at times," or "some of the time"; that his dietitian advised him to "check his blood sugar before and after one meal per day"; that Plaintiff's diabetes medication (metformin) was to be taken twice per day; and that a doctor indicated Plaintiff's "disease course had worsened" in 2019, but also noted there were "no diabetic complications." (R. 25.) Finally, the ALJ noted reports that Plaintiff only took his medication once daily and, even then, sometimes forgot. (R. 26.)

At the RFC phase, the ALJ noted Plaintiff's testimony that "his diabetes mellitus has gotten worse over the past three years" and his statements of treatment compliance. (R. 32.) The ALJ also noted evidence of Plaintiff's lack of compliance with his diabetes treatment regimen (R. 32); Dr. Lad's "return to work statement"—which recommended Plaintiff be allowed to take an unspecified number of breaks to "check his blood sugar, eat accordingly, and take his medications for diabetes mellitus with neuropathy" (R. 34); and an opinion from Plaintiff's hernia doctor that he could sustain an eight-hour workday, five days per week, "without an unreasonable number and length of rest periods or absences" (R. 36, 39).

Considering the ALJ's discussion of numerous categories of evidence contemplated by § 404.1513, the undersigned declines to find that she rendered an improper "medical judgment . . . without providing support for her findings . . . ." (ECF No. 17 at 13.) The above evidence, which contradicts much of Plaintiff's testimony, is a

8

more than sufficient "explanation as to how she reached her conclusion regarding the frequency of breaks required by [claimant]." (*Id.* at 12.) As the Commissioner notes (ECF No. 18 at 8), it is the ALJ's job to come to these types of conclusions. The undersigned finds no error.

### B. RFC – Limitation to "Some" Changes in the Work Setting.

Next, Plaintiff argues the ALJ erred in defining his ability to adapt to "some" changes in the work setting. (ECF No. 17 at 4-7.) According to Plaintiff, the RFC "lacked [the] definition" necessary for the VE to understand it when testifying about available work at step five. (*Id.* at 5.) Plaintiff asserts this error is particularly significant because a substantial loss in ability "to deal with changes in a routine work setting," by SSR, would severely limit his potential occupational base. (*Id.* at 6 (citing SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).) The Court is persuaded by neither argument.

#### 1. The VE's understanding of "some" changes

At step five, an ALJ utilizes the VE to help determine if a claimant's remaining work skills "can be used in other work" and to resolve complex vocational issues. *See* 20 C.F.R. § 404.1566(e);[8] SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). As such, it is proper for the ALJ to rely on VE testimony in determining whether a plaintiff is disabled. *See, e.g., Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) ("The ALJ properly relied on the testimony of a vocational expert that plaintiff had residual functional capacity for a limited range of light work and there were jobs he could perform. This testimony is substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled."); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished)

---

[8] *See generally* 20 C.F.R. § 416.966 for Title XVI.

9

("Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof.").

Plaintiff argues the RFC's reference to "some" changes in the work setting resulted in "expert testimony . . . not grounded in substantial evidence." (ECF No. 17 at 5-7 (claiming the phrase was not concretely defined).) However, Plaintiff points to no rule, regulation, or case that requires the ALJ define every phrase in the RFC. *See Bede-Morrell v. Colvin*, No. C2:13-CV-01317-JCC, 2014 WL 2807661, at *4 (W.D. Wash. May 16, 2014) (noting a similar lack of authority).

The undersigned finds the reasoning of *Finley v. Colvin* persuasive on this matter. *See Finley v. Colvin*, No. CV 14-430-SDD-RLB, 2015 WL 5162476, at *4 (M.D. La. Aug. 12, 2015). In *Finley*, the claimant raised a similar argument, maintaining that the ALJ used vague terms subject to multiple interpretations in the RFC and hypothetical, and that there was no way of knowing whether the VE and ALJ "were on the same page" regarding the meaning of those terms. *Id.* The court found the claimant's arguments to be unfounded. *Id.*

First, it noted that there was no "evidence in the hearing transcript suggesting that the ALJ and VE were *not* 'on the same' page"—as the "VE did not ask for clarification of any of the terms challenged by Plaintiff"—nor did plaintiff cite to "any evidence suggesting that the VE was confused or in any way misunderstood the hypothetical or its terminology." *Id.* (collecting cases finding a VE's confusion must be supported by some evidence). The same is true here. Plaintiff has pointed to no evidence—and the Court has found none—indicating that the VE misunderstood the meaning of any of the phrases

10

contained in the RFC or the hypothetical. At hearing, the VE did not ask any follow up questions or request clarification of any terms, and Plaintiff's attorney failed to object to the RFC as being vague or difficult to understand. (R. 79-81.) Essentially, Plaintiff's argument hinges on the chance that the VE *might* have been confused. This is not enough.

Second, like the terms at issue in *Finley* ("routine," "repetitive," "minimal"), the word "some" is a "commonplace term[] with everyday meaning that did not require further elaboration or clarification." *Finley*, 2015 WL 5162476, at *4 (collecting cases regarding words that have "common" usage or meaning). The Court will, therefore, not assume, without any evidence, that the VE misunderstood its meaning. *See Burnette v. Astrue*, No. 2:08-CV-009-FL, 2009 WL 863372, at *4 (E.D.N.C. Mar. 24, 2009) ("The limitation that plaintiff may have 'some problems' with social interaction and adaptive functioning may not be a medically precise term of art. However, it adequately communicates to the VE that the claimant may have difficulty in these areas of functioning in the work world."); *see also Tatrai v. Berryhill*, No. CIV-18-141-F, 2018 WL 4624858, at *2-*4 (W.D. Okla. Sept. 10, 2018) (finding no issue with use of phrases like "adequate," "most of the time," "variable," and "from time to time"). The Court finds no error.

### 2. SSR 85-15

Plaintiff's reference to SSR 85-15 changes none of this. (ECF No. 17 at 6.) The portion cited from SSR 85-15 applies when "a person's only impairment is mental," something not applicable here. 1985 WL 56857, at *4. However, other SSR's contain similar considerations. *See* SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). SSR 96-9p considers "the impact of a [RFC] assessment for less than a full range of sedentary work on an individual's ability to do other work," and allows that a "substantial loss of ability

11

to meet any one of several basic work-related activities on a sustained basis," including the ability to deal with changes in a routine work setting, "will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." *Id.*

The Court rejects any argument that the ability to "adapt . . . to some changes in [the] work setting" equates to a "substantial loss of ability . . . [d]ealing with changes in a routing work setting." *See Bilodeau v. Colvin*, No. CA 2:12-1298-CMC-BHH, 2013 WL 3880132, at *1-2 (D.S.C. July 26, 2013) (rejecting argument that a limitation to adapting to changes in a work setting "if they were infrequent and gradually introduced" constituted a "substantial loss" under SSR 85-15.) Anything less than a substantial loss "may or may not significantly erode the unskilled sedentary occupational base." SSR 96-9p, at *9. When the loss is less-than-substantial, "[t]he individual's remaining capacities must be assessed and a judgment made as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience." *Id.* "When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource." *Id.* This is what the ALJ did here. She assessed Plaintiff's RFC, presented that RFC in a hypothetical to the VE, and relied on the VE's testimony to make her step-five determination. Nothing more was required.

      **C.    Step Five – No Conflict with the DOT.**

Lastly, Plaintiff argues the ALJ erred in relying on VE testimony at step five without addressing a conflict between that testimony and the DOT. (ECF No. 17 at 7-10.)

At step five, the Commissioner has the burden "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given [his] age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting

*Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)). An ALJ may rely on the VE's testimony to identify jobs that a claimant can perform—so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

This reliance has its limits, however, and an ALJ must question the VE about the source of her opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). This includes eliciting a reasonable explanation for any apparent conflict between the VE's testimony and the DOT. *Id.*; *see also* SSR 00-4p, at *2 (noting ALJ duties when there is an "apparent unresolved conflict"). But that is not to say that every discrepancy between an expert's testimony and the DOT amounts to an apparent conflict requiring further explanation. *See Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished). "[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000), *quoted approvingly in Segovia*, 226 F. App'x at 804. "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). As such, the ALJ is not required to ask the VE "more specific follow-up questions," where "based on the DOT descriptions, no apparent or obvious conflict existed." *Brown v. Berryhill*, No. 17-cv-00556-GKF-GBC, 2019 WL 2488730, at *6 (N.D. Okla. Mar. 11, 2019).

In this case, the RFC limits the reaching Plaintiff can perform with his left, non-dominant upper extremity to occasionally overhead and frequently in all other

13

directions.[9] (R. 31.) Plaintiff asserts that this limitation conflicts with the DOT description of the jobs identified by the VE, which all require frequent reaching. *See* DOT § 731.685-014, 1991 WL 679811 (4th ed. 1991) (stuffer); DOT § 521.687-086, 1991 WL 674226 (4th ed. 1991) (nut sorter); DOT § 713.687-018, 1991 WL 679271 (4th ed. 1991) (final assembler).

Finding the Tenth Circuit's decision in *Segovia* persuasive, this Court has previously addressed—and rejected—the argument that a partial limitation in reaching categorically represents an apparent conflict in instances where the DOT's description of the reaching requirement is more generally stated than in the RFC. *See Jesette G. v. Kijakazi, No.* 21-CV-00379-SH, 2023 WL 1880537, at *8-*9 (N.D. Okla. Feb. 10, 2023), for a full analysis.[10] Here, the VE was aware of Plaintiff's left-side, overhead reaching limitation from the hypothetical the ALJ presented (R. 79-80); the VE testified Plaintiff could perform the jobs of filler, sorter, and assembler (R. 80-81); and the VE was asked whether her testimony was in conflict with the DOT and indicated that it was not (R. 81). As in *Segovia*, there is no apparent conflict between the VE's testimony and the DOT's general reference to non-specific reaching.

Moreover, the DOT descriptions for the three jobs do not list any duties indicating that overhead reaching is necessarily involved at all, much less frequent overhead

---

[9] Plaintiff's reaching with his right, dominant upper extremity is not limited.

[10] Other judges within this district have applied *Segovia* in cases with analogous facts. *See, e.g., Kenneth R.C. v. Saul*, No. 19-CV-255-FHM, 2020 WL 3249977, at *2-*3 (N.D. Okla. June 16, 2020); *Brown*, 2019 WL 2488730, at *6; *Carolyn Y. v. Berryhill*, No. 17-CV-286-GKF-FHM, 2018 WL 5660752, at *3-*6 (N.D. Okla. Sept. 12, 2018); *White v. Colvin*, No. 15-CV-27-CVE-FHM, 2016 WL 11468932, at *7 (N.D. Okla. Jan. 19, 2016); *Johnson v. Colvin*, No. 13-CV-288-GKF-PJC, 2014 WL 3671322, at *12 (N.D. Okla. July 22, 2014); *see also John S. I. v. Kijakazi*, No. 20-CV-279-CDL, 2021 WL 4443337, at *4-*6 (N.D. Okla. Sept. 28, 2021) (making similar findings at step four).

reaching. For the stuffer job, the worker tends machines that blow filler into stuffed-toy shells, inserts precut supporting wire, places shell opening over machine nozzle, places stuffed toy in tote box, records production, and may stuff toys by hand. *See* DOT § 731.685-014. For the nut sorter job, the worker removes defective nuts and foreign matter from bulk nut meats; picks out broken, shriveled, or wormy nuts and foreign matter from the conveyor belt; and places defective nuts and foreign matter into containers. *See* DOT § 521.687-086. For the final assembler job, the worker attaches nose pads and temple pieces to optical frames using hand tools, positions parts in fixture to align screw holes, and inserts and tightens screws using a screwdriver. *See* DOT § 713.687-018. This is not a situation where the DOT job description indicates that overhead work is required. *Cf. Carrie E.N. v. Saul*, No. 19-cv-126-FHM, 2020 WL 1330433, at *2 (N.D. Okla. Mar. 23, 2020) (finding an apparent conflict between a limitation of "avoid[ing] overhead work" and the tasks performed by a housekeeper cleaner, including "cleaning draperies, walls, ceilings, and replacing light bulbs"). As such, the ALJ committed no error.[11]

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 22nd day of August, 2023.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[11] Plaintiff cites *Bronson v. Astrue*, 530 F. Supp. 2d 1172 (D. Kan. 2008) as supporting his argument that "the ALJ's failure to address the conflict [was] error." (ECF No. 17 at 8.) The Court finds *Bronson* does not support Plaintiff's arguments.